UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAKAPHONG CHANTHA, (A#072-613-225), | No. 1:26-cv-01052-DJC-SCR |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| WARDEN, | |
| Respondent. | |

Petitioner is a federal immigration detainee proceeding through appointed counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241. The assigned District Judge referred the action to the undersigned pursuant to Local Rule 302 and 28 U.S.C. § 636(b)(1). Petitioner's amended § 2241 has been fully briefed by the parties and is deemed submitted on the record.

**I.  Factual and Procedural History**

Petitioner is of Laotian heritage because both of his parents were born in that country. ECF No. 12 at 6. However, his parents do not have citizenship documentation from Laos because they were not born in a hospital. ECF No. 12 at 6. Before he was born, petitioner's parents fled Laos and resided in a refugee camp in Thailand during the Vietnam War. ECF No. 12 at 6. Petitioner was born in that refugee camp in approximately 1988. Id. "No member of the family resided outside of the refugee camp or obtained Thai citizenship before leaving the country."

1

As the child of a refugee, petitioner was lawfully admitted to the United States in 1992 when he was a toddler.  ECF No. 12 at 6; ECF No. 13 at 55 (Decision and Order of the Immigration Judge).  In 2021, his parents and siblings became U.S. citizens.  ECF No. 12 at 6.

Petitioner was convicted of a federal drug conspiracy charge in 2016 and served his sentence from 2016 until 2021.  ECF No. 12 at 6.  Upon his release, petitioner resided in Arizona.  Id.

On July 10, 2025, Immigrations and Customs Enforcement ("ICE") detained petitioner in Arizona.  ECF No. 12 at 6.  He is currently in custody at the California City Detention Center located in this judicial district.  ECF No. 12 at 6.  During his entire period of detention "no neutral decisionmaker has conducted a hearing to determine whether this lengthy incarceration is warranted based on danger or flight risk."  Id.  While in immigration custody, petitioner applied for deferral of removal pursuant to the United Nations Convention Against Torture ("CAT"), but the application was denied.  ECF No. 12 at 6; ECF No. 13 at 55 n.1.  On January 13, 2026, an Immigration Judge ("IJ") ordered petitioner removed to Thailand or, in the alternative, to Laos.  ECF No. 13 at 55-71 (Decision and Order of the Immigration Judge).  According to petitioner, neither country will accept him based on his lack of citizenship documentation, thereby rendering him a stateless person.  Id.

On March 5, 2026, petitioner filed an amended § 2241 petition and complaint for declaratory and injunctive relief seeking his immediate release pending resolution of his immigration removal proceedings.  ECF No. 12.  In his first claim for relief, petitioner contends that his ongoing detention without any determination that he is a danger to the community or a flight risk violates the Fifth Amendment's Due Process Clause because it is arbitrary and prolonged.  ECF No. 12 at 10-11.  Petitioner submits that under the three-prong test of Mathews v. Eldridge, 424 U.S. 319, 335 (1976), he is entitled to relief on this basis alone.  ECF No. 12 at 7-9.  In his second claim for relief, petitioner asserts that removing him to a third country that is not Thailand or Laos without adequate notice or the opportunity to assert a fear-based claim that his life or freedom would be threatened violates the Fifth Amendment, 8 U.S.C. § 1231, and CAT protections.  ECF No. 12 at 11-12.  "Given [p]etitioner's unique vulnerability as a stateless person

2

with no country willing to accept him—a man who has spent thirty-four years in the United States and has no meaningful ties to any other country—the threat of such removal without adequate process is credible, imminent, and concrete." Id. at 9-10.

By way of relief, petitioner seeks immediate release or, in the alternative, a bond hearing where the government must prove that continued detention is justified by clear and convincing evidence that he is a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Petitioner's release would present. Id. at 12. If the government cannot meet this burden, then the IJ should be ordered to release petitioner on appropriate conditions of supervision, taking into account his ability to pay a bond. Id. at 12. Petitioner further seeks to enjoin respondent "from removing [p]etitioner to any third country unless and until [r]espondent[] ha[s]: (a) provided [p]etitioner with written notice, in a language he understands, of the specific country to which removal is proposed and the statutory basis for that designation; (b) afforded [p]etitioner a meaningful opportunity to consult with counsel and to apply for withholding of removal and protection under the [CAT] with respect to that country; and (c) obtained evidence that the proposed third country has agreed to accept [p]etitioner." Id.

In its return to the § 2241 petition, respondent counters that petitioner's removal order became final on February 13, 2026, which makes his detention mandatory pursuant to 8 U.S.C. § 1231(a)(2) for a period of 90 days. ECF No. 13 at 2. During this period, "DHS is actively working to timely obtain travel documents" to facilitate petitioner's removal.[1] ECF No. 13 at 2. After this 90-day removal period ends, respondent further submits that ICE has the discretion to continue to detain petitioner and he would not even be entitled to a bond hearing at that juncture. Id. at 3-4 (citing Johnson v. Arteaga-Martinez, 596 U.S. 573, 578-79 (2022)). Petitioner's I-213 immigration form attached to respondent's return indicates that petitioner "has never been a citizen or national of any country other than Thailand." ECF No. 13 at 13. The final order of

---

[1] Respondent's answer was filed a month after the 90-day removal period began and two months after the removal order was entered. Despite this timeline, the declaration from the Deportation Officer, which is the only evidence upon which respondent relies, does not describe what specific efforts have been made to obtain travel documents to either Laos or Thailand. See ECF No. 13 at 6-9.

3

removal issued by an IJ indicates that petitioner "was born in a refugee camp in Thailand and that "he does not speak fluent Lao or Thai … he has never been to Laos, he has no family in Laos or Thailand, and he does not know anybody in either of those countries. He further testified that he does not have a birth certificate or passport from any country." ECF No. 13 at 57. Respondent also submitted information concerning petitioner's federal criminal conviction for conspiracy to distribute methamphetamine and heroin in the District of Alaska, as well as a violation of the terms of supervised release for that conviction. ECF No. 13 at 15-48.

In his reply, petitioner emphasizes that respondent has "produced no travel documents, no repatriation agreement, and no confirmation from the Lao or Thai government" that his removal is reasonably foreseeable. ECF No. 14 at 2. Concerning claim one, petitioner contends that the Supreme Court's decision in Zadvydas "held that once a detainee provides 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the burden shifts to the government to rebut that showing." ECF No. 14 at 2 (citing Zadvydas, 533 U.S. at 701). In this case, petitioner submits that respondent has not met that burden because the one declaration they filed "demonstrate[s] only that removal is being attempted, not that it is likely to occur. The Government has had more than enough time to obtain the documents in question." ECF No. 14 at 3. Petitioner further cites to two separate Articles of Laos's nationality law which "confirms that no travel documents will ever issue." ECF No. 15. Petitioner also notes that the parties agree that petitioner was born in a Thai refugee camp and was never a citizen of Thailand. Id. In response to petitioner's order of removal becoming final, petitioner submits that the 90-day removal period that authorizes mandatory detention "presupposes that removal is actually possible." Id. at 4. However, this statute does not authorize "indefinite detention where removal is demonstrably impossible from the outset." Id. In this case, "the government's invocation of the 90-day period is an attempt to use a procedural timeline to evade a substantive constitutional limitation. The Constitution does not permit detention to continue simply because a statutory clock has not yet run when the government already knows that removal cannot be accomplished." Id. Therefore, according to petitioner, he is still entitled to relief pursuant to Zadvydas. Id. Finally, petitioner submits that his criminal history does not

justify his continued detention because even respondent does not argue that his detention is necessary to protect the community from danger or to prevent petitioner's flight risk.  Absent such evidence, petitioner's ongoing detention is punitive in nature in violation of Zadvydas and the Constitution.  Id. at 5.

## II.    Legal Standards

Detention is mandatory during the 90-day "removal period" following the entry of a final order of removal.  See 8 U.S.C. § 1231(a)(1)-(2).  "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and [the Ninth Circuit Court of Appeals] stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement."  Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (quoting 8 U.S.C. § 1231(a)(1)(B)(i)-(iii)).  An order of removal becomes final "only upon the earlier of (i) a BIA determination affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order."  Ocampo v. Holder, 629 F.3d 923, 926 (9th Cir. 2010) (citing 8 U.S.C. § 1101(a)(47)(B)).  "If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).  ICE "may" only continue to detain the noncitizen after the 90-day removal period under certain circumstances, including when the noncitizen is removable on grounds of being convicted of certain criminal offenses.  8 U.S.C. § 1231(a)(6).

This statutory scheme also implicates petitioner's due process rights under the Fifth Amendment.  See Zadvydas v. Davis, 533 U.S. 678, 692 (2001) (describing "[t]he serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any such protection" as "obvious"); see also Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that a DHS regulation governing post-final order removal detention was "promulgated to protect a fundamental right derived from the Constitution or a federal statute[.]").  In Zadvydas, 533 U.S. 678, the Supreme Court read an implicit due process limitation into 8 U.S.C. § 1231(a)(6), in order to avoid serious

constitutional problems.  The Supreme Court concluded that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.  As a result, the Supreme Court held that "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699.  In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six-month period of detention. Id. at 701.  After six months, if a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

While the Supreme Court has upheld the facial constitutionality of mandatory detention statutes, including § 1226(c) in Demore v. Kim, 538 U.S. 510 (2003), it has also recognized that petitioners may bring as-applied constitutional challenges to their own detention under such statutes.  See Nielsen v. Preap, 586 U.S. 392 (2019) (recognizing the right to bring such as-applied challenges:  "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it."); see also Demore, 538 U.S. at 532 (Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified.").  Accordingly, the detention of any particular person under § 1231(a)(2) is subject to constitutional limitations on an as-applied basis.

Courts examine procedural due process claims in two steps:  the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

6

### III.    Analysis

Respondent contends that the 90-day mandatory detention period of 8 U.S.C. § 1231(a)(2) is conclusive in resolving this case against petitioner.[2]  However, petitioner's overall period of detention—nearly nine months—has now become prolonged.  As in other statutory contexts where a noncitizen is subjected to prolonged, mandatory detention, petitioner may, at a minimum, invoke the protections of due process on an as-applied basis.

ICE detained petitioner on July 10, 2025 and charged him with being removable based on an aggravated felony for a drug trafficking crime.  See ECF No. 13 at 50-53.  Petitioner's initial detention was accordingly governed by 8 U.S.C. § 1226(c).  The authority for petitioner's detention shifted to § 1231(a)(2) on February 13, 2026 when his time to appeal the IJ's order of removal expired.  ECF No. 13 at 55-71.  The shift in detention authority occurred shortly after petitioner filed this habeas action in early February 2026.  Respondent suggests that petitioner's entire seven-month period in detention prior to his filing of the petition does not trigger any liberty interest protected by the Fifth Amendment's Due Process Clause because petitioner's detention authority shifted to 8 U.S.C. § 1231(a)(2) by the time an answer to the petition was required.  Petitioner counters that the detention clock does not restart to zero by virtue of a change in the statute that authorizes a noncitizen's ongoing detention.  The undersigned agrees with petitioner.  Despite the shifting statutory authority, petitioner is subjected to detention that has become prolonged.  The Ninth Circuit has referred to detentions longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them."  Rodriguez Diaz, 53 F.4th at 1207 (citations omitted).  Other district courts have found mandatory detentions of similar lengths to violate due process.  See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are

---

[2]  As a purely practical matter, the end of petitioner's 90 day mandatory detention period may pass soon after the instant § 2241 petition is resolved due to the number of immigration habeas cases pending before this Court.

imminent"); Cabral v. Decker, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (noting that petitioner's seven-month detention under § 1226(c) was "within the range . . . sufficient to show a due process violation").  The prolonged nature of petitioner's detention gives rise to an as-applied constitutional challenge to that detention.

In reaching this conclusion, the undersigned finds persuasive the reasoning in Doe v. Becerra, 697 F.Supp.3d 937 (N.D. Cal. 2023), which also involved a habeas petitioner subject to detention under § 1231(a)(2) after a prolonged period of earlier detention.  As the Court in Doe found, "[t]he IJ's final order of removal may have started a new clock for the Government to take a different type of action, but it did not reset the clock as to the time Doe has been detained without a bond hearing."  697 F.Supp.3d at 943.  In the instant case, the entirety of petitioner's nearly nine months of detention absent a determination that he is a flight risk or a danger to the community establishes the basis for his as-applied challenge to ongoing detention.  "[J]ust as the 'shall' in Section 1226 gives way to as-applied due process challenges, so too must the 'shall' in Section 1231(a)."  Doe, 697 F.Supp.3d at 943.

Petitioner's case is distinguishable from Khotesouvan v. Morones, 386 F. 3d 1298 (9th Cir. 2004), because petitioner had already been detained for almost 6 months at the time he filed the original § 2241 application in this case.  The petitioners in Khotesouvan had only been detained by immigration officials for around two months at the time they filed their habeas challenges.  In that circumstance, the Ninth Circuit held that their detention could not be challenged until at least the 90-day removal period had passed.  Id.  While Khotesouvan may preclude habeas petitioners from seeking immediate release under Zadvydas during the 90-day removal period, based on the total length of petitioner's detention, Khotesouvan does not preclude other relief.

In sum, given the length of petitioner's detention without a bond hearing, the ongoing mandatory nature of his detention under § 1231(a)(2), as well his "removable-but-unremovable" limbo as a stateless person, the undersigned concludes that he has a protected liberty interest.  The Court therefore proceeds to apply the due process framework in Mathews v. Eldridge.

////

### 1.  Private Interest

Turning to the first factor in Mathews, petitioner has a strong liberty interest in avoiding prolonged as well as potentially indefinite detention.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690.  An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial."  Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011).  At this point in the proceedings, petitioner has been detained for nearly nine months.  The Ninth Circuit has previously referred to detentions of longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022) (citations omitted).  This factor tilts strongly in petitioner's favor especially considering there is no end date to his detention.  Petitioner also details how his ongoing detention has resulted in a repeated lack of access to his daily medication for Chrohn's disease at both California City Detention Facility as well as the Golden State Annex.  ECF No. 12 at 17.  See Doe v. Chestnut, 810 F.Supp.3d 1169, 1201 (E.D. Cal. 2025) ("[t]he evidence now before the Court at least suggests several important ways in which the conditions at [California City] are not only inherently harsh but also worse than the conditions […] in state prison.") (citing Doe v. Becerra, 732 F.Supp.3d. 1071, 1089 (N.D. Cal. 2024)).  All of these circumstances combine to tip the first Mathews factor strongly in petitioner's favor.

### 2.  Risk of Erroneous Deprivation

Having determined that petitioner has a protected liberty interest, the Court turns to the second Mathews factor which addresses whether there is a risk of an erroneous deprivation to that liberty interest.  In this case, petitioner has no further immigration court hearings since he did not appeal the IJ's order of removal.  Moreover, it is undisputed that petitioner has not received a bonding hearing at any point during the nearly nine months of his detention to date.  "In the absence of any meaningful initial procedural safeguards, it appears to us that almost *any* additional procedural safeguards at some point in the detention would add value."  Black v.

Decker, 103 F.4th 133, 153 (2d Cir. 2024) (emphasis in original); see also Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk of an erroneous deprivation where petitioner had not received any bond or custody redetermination hearing during his one-year detention under § 1226(c)).  Accordingly, the undersigned finds that the second Mathews factor also favors petitioner.

### 3.  Government's Interest

Under the final Mathews factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335.  While the government has an interest in seeking to remove noncitizens during the 90-day removal period, petitioner's undisputed evidence demonstrates that neither of the countries he was ordered removed to will accept him, which renders him a stateless person.  As a result, petitioner has demonstrated that "there is no significant likelihood" of his removal "in the reasonably foreseeable future," despite the fact that his 90-day removal period has not yet expired. Zadvydas, 533 U.S. at 701.  The fact that petitioner has been ordered removed but appears to be unremovable weakens the government's interest in his detention without a bond hearing.

Respondent does not address any fiscal or administrative burden that would result from providing petitioner with a bond hearing before an IJ.  See Velasco-Lopez v. Decker, 978 F.3d 842, 854 (2d Cir. 2020) (emphasizing the "Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose.'").  To the extent that "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens],'" that interest is not undercut by allowing an IJ, in the first instance, to make an individualized assessment whether petitioner, in light of his particular criminal record, presents a flight risk or a danger to the community.  Black, 103 F.4th at 153-54.  The government's interest in further detaining petitioner without a hearing to determine whether such detention is justified is minimal.  Thus, this factor also weighs in favor of petitioner.

In light of this analysis, the undersigned recommends that the petition for a writ of habeas corpus be granted with respect to claim one.  However, the more difficult question in this case is

the appropriate scope of habeas relief.  Petitioner submitted unrefuted evidence demonstrating that his removal to both Thailand and Laos is unlikely.  Moreover, respondent has not suggested the possibility of removing petitioner to a third country or demonstrated that removal to such designated third country is reasonably foreseeable.  Because petitioner is within § 1231(a)'s 90-day removal period, and on the current record, the appropriate remedy is not immediate release, but the alternative request for an individualized bond hearing before a neutral decision-maker at which the government bears the burden of justifying continued detention.  See Doe, 697 F. Supp. 3d at 945-48 (holding due process required a bond hearing before an IJ in which government bears the burden where petitioner, who had won CAT relief, was within the 90-day removal period but had already been detained for 22 months).  At the bond hearing, "the government must prove by clear and convincing evidence that" petitioner "is a flight risk or a danger to the community to justify denial of bond," because "civil commitment for any purpose constitutes a significant deprivation of liberty."  Singh v. Holder, 638 F.3d 1196, 1203-04 (9th Cir. 2011); Doe, 697 F. Supp. 3d at 947-48 (adopting reasoning of Singh in context substantially identical to this case); see also Singh v. Albarran, No. 1:26-cv-0940 DC DMC (HC), 2026 WL 392169, at *5 (E.D. Cal. Feb. 12, 2026) (collecting cases).

With respect to claim two concerning third country removal, respondent does not contend that petitioner is removable to a third country at this juncture.  The ripeness doctrine prevents federal courts from prematurely deciding issues that are abstract, hypothetical, or speculative.  Flaxman v. Ferguson, 151 F.4th 1178, 1184 (9th Cir. 2025).  This doctrine is "'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction[.]'"  Project Veritas v. Schmidt, 125 F.4th 929, 941 (9th Cir. 2025) (quoting Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003)).  On the record before the Court, claim two is not ripe for review.  It is merely speculative that respondent intends to remove petitioner to a third country.  For this reason, the undersigned recommends denying claim two of the amended § 2241 petition without prejudice to renewal in a subsequent habeas corpus action.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's amended application for a writ of habeas corpus (ECF No. 12) be granted

11

on claim one based on the violation of petitioner's Fifth Amendment right to due process.

2. Respondent be ordered to provide petitioner with an individualized bond hearing before an immigration judge, at which the government bears the burden of justifying continued detention by clear and convincing evidence, within fourteen (14) from the date of any order adopting these Findings and Recommendations.

3. Respondent be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of such bond hearing.

4. Claim two of the amended § 2241 petition be denied without prejudice to renewal in a subsequent habeas corpus action in the event that the government initiates proceedings to remove petitioner to a third country.

5. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 6, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE